IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

AWILDA VEGA-MORALES,

  Plaintiff

    v.

JO ANNE B. BARNHART
COMMISSIONER OF SOCIAL SECURITY,

  Defendant

**CIVIL NO. 04-1741 (DRD)**

## REPORT AND RECOMMENDATION

The case at bar was brought before the Court pursuant to the Social Security Act's[1] ("Act") judicial review provision, which expressly authorizes any individual who requests disability benefits from the Commissioner of Social Security, but whose request has been denied, to seek review of said decision pursuant to 42 U.S.C. § 405 (g). After reviewing the transcript of the record and all memoranda of law (Docket Nos. 3, 5 and 7) submitted by the parties, the Court finds that denial of a period of disability insurance benefits was supported by substantial and correctly applied evidence, for which the Commissioner's ruling must be **AFFIRMED.**

## I. STANDARD OF REVIEW

Judicial review of the Commissioner of Social Security's denial of disability benefits is limited in scope. The Court's only tasks are to ensure that the final decision is supported by substantial evidence and whether the correct legal standard was used. 42 U.S.C. § 405 (g); See Seavey v. Barnhart, 276 F. 3d 1, 9 (1ST Cir. 2001). The term "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). If the Court finds the determination to be supported by substantial evidence of record, the Commissioner's findings must be upheld, even if the Court disagrees with them or, had found otherwise under a *de novo* standard of review. See Lizotte v.

---

[1] 42 U.S.C. § 405 *et seq.*

**CIVIL NO. 04-1741 (DRD)**                         2

Secretary of Health and Human Servs., 654 F. 2d 127, 128 (1ST Cir. 1981). However, the Commissioner's findings are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## II. FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After evaluating the evidence of record, the Administrative Law Judge ("ALJ") made the following findings in his decision denying plaintiff a disability benefits:

1. The claimant met the disability insured status requirements of the Act on July 7,1999, the date the claimant stated she had become unable to work, and continues to meet them through December 31, 2004.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date. She is 40 years of age, has a high school education and a past relevant work as a sewing machine operator.

3. The medical evidence establishes high blood pressure, musculoskeletal involvement of the cervicolumbar spine and hands and an affective disorder. There is no impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No.4.

4. The claimant's allegations of severe, frequent and disabling impairment related symptoms are unsupported by the preponderance of the medical and other evidence of record and not credible.

5. The claimant has the residual functional capacity to perform the exertional and non-exertional requirements work except for arduous physical exertion, including lifting, carrying, pushing or pulling in excess of 20 pounds frequently or 50 pounds occasionally or repetitive bending. The claimant is able to stand and walk for consecutive periods of up to six hours during the work day and sit for periods of six to eight hours. Her depression would preclude unduly complex, very stressful work, or working with the public but the claimant could still perform simple, routine, work of an unskilled or low semiskilled nature (20 CFR 404.1545)

**CIVIL NO. 04-1741 (DRD)**                              3

      6.     The claimant retains the residual functional capacity to perform her past relevant work as a sewing machine operator that did not involve the performance of work related activities precluded by the above limitation(s) (20 CFR 404.1565)

      7.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20CFR 404.1520(e)).

### III. PLAINTIFF'S ARGUMENT ON ADMINISTRATIVE REVIEW

Plaintiff Awilda Vega-Morales ("Vega-Morales") alleges on administrative review that the Commissioner's ruling is not supported by substantial evidence as called for by the Act. 42 U.S.C. § 405 (g).

### IV. LEGAL ANALYSIS

The Commissioner employs a five-step process to determine if an individual is disabled within the meaning of the Social Security Act. Seavy v. Barnhart, 276 F.3d 1, (1st Cir. 2001). The plaintiff may be considered disabled within the meaning of the Act if she is unable to perform any substantial gainful work because of a medical condition which can be expected to last for a continuous period of at least twelve (12) months. 42 U.S.C. §§ 416(i)(1) and 423(d) (1). Evidence of physical impairment is not enough to warrant an award of disability insurance benefits. See McDonald v. Sec'y Health and Human Services, 795 F.2d 1118, 1120(1st Cir. 1981). To be disabled within the meaning of the act, the plaintiff must be precluded from engaging in any substantial gainful activity by reason of that impairment. Id.

The medical evidence reveals that Vega-Morales sought treatment at the State Insurance Fund ("SIF") on February 1998 where numerous tests were performed. X-rays of both hands, cervical spine, lumbosacral spin, and dorsal spine were taken on February 9, 1998. Hands and cervical spine studies were normal, lumbosacral spine study revealed mild dorsolumbar scoliosis and muscle spasms, and dorsal spine study also found mild dorsolumbar scoliosis (T.r. 147). On February 23, a physiatrist evaluated Vega-Morales and ordered eight (8) sessions of therapy. In May, 1998, an electromyogram (EMG) was interpreted as normal with no incidence of carpal tunnel syndrome (T.r. 145)

**CIVIL NO. 04-1741 (DRD)**                4

A year after the patient's notes were closed (June 1998), on July 12, 1999, she returned with symptoms of pain on her arms, shoulders, elbows, hands and legs, right CTS; cervical dorsal and lumbosacral myositis. A cervical CT scan revealed minimal apparent decrease in size of C4-C5, possibly related to posture and minimal levoscoliotic tilt. A CT scan of the plaintiff's lumbosacral spine revealed normal intervertebral disc spaces and facet joints; the L3-4 on the L4-5 intervertebral disc showed no distinct abnormalities. There was a minimal posterior central accertuation of the L5-S1 disc but no definitive herniation identified (T.r. 135). Ten sessions of therapy were recommended. After completing the same, Vega-Morales said she was feeling better. The therapist found moderate spasms in this area, as well as numbness in both hands. According to notes from November 1999, the plaintiff had right CTS but no trigger or atrophy.(T.r. 130).

Thereafter, on October 2001, Dr. Oscar E. Ramos Roman submitted a neurological report indicating that the plaintiff had severe muscle spasms. However, motor strength was fair to normal, muscle tone was normal and no other abnormalities were identified. (Tr. 162-165).

On October 9, 2001, plaintiff underwent a consultative evaluation by Dr. Melvyn Acosta Ruiz ("Dr. Acosta), an internist. She was found in adequate appearance, lungs, heart and heart rate were within normal limits; spine revealed no lumbosacral tenderness; she had full range of motion; neurological evaluations revealed an alert and normal patient, with a normal cerebellar function, and cranial nerves were intact; motor and sensory systems were within normal limits; and x rays of her cervical spine and lumbosacral spine were interpreted as normal; and an electrocardiogram also came out as normal. (Tr. 152-161).

On January 29, 2002, plaintiff underwent another consultative evaluation by Dr. Edgar C. Hernandez-Viera ("Hernandez-Viera"), a neurologist. Dr. Viera found the plaintiff as having adequate appearance, no acute distress, and oriented in all spheres; Cranial nerves were intact, and motor strength, back examination, sensory examination, coordination, and reflexes were normal. She was diagnosed as having chronic low back and neck pain, lumbosacral and cervical strain (Tr. 185-192).

**CIVIL NO. 04-1741 (DRD)**                     5

In May, 2003, an EMG revealed no evidence of carpal tunnel syndrome deterioration since the June 1999 study (Tr. 221-222).

The record also contains residual functional capacity assessments from two non-examining state agency physicians who reviewed the medical evidence on record. Dr. Acisclo Marxuach concluded on February 2002 that the plaintiff could perform medium work, sit for six hours a day, and stand and walk for six hours a day (tr. 213-220). Moreover, on September 2002, Dr. Jose R. Pesquera Garcia reviewed the medical evidence on record and adopted the prior conclusion (Tr. 220).

Based upon the claimant's RFC, the ALJ must determine whether the claimant can perform any of her past relevant work or other work existing in significant numbers in our economic structure. To that extent, the ALJ concluded that her ability to stand, walk, sit, use her arms, arms and legs, was not significantly restricted. The medical evidence of the tests performed indicate that the patient has the residual functional capacity to perform the exertional and non-exertional requirements of light work except for arduous physical exertion, including lifting, carrying, pushing or pulling in excess of 20 pounds frequently or 50 pounds occasionally or repetitive bending. The claimant is able to stand and walk for consecutive periods of up to six hours during the work day and sit for periods of six to eight hours (Tr. 213-220). Her depression would preclude unduly complex, very stressful work, or working with the public but the claimant could still perform simple, routine, work of an unskilled or low semiskilled nature (20 CFR 404.1545). Such residual functional capacity assessments were not contested by the claimant.

Moreover, the ALJ determined that the Plaintiff's condition did not prevent her from performing her past relevant work. The ALJ considered all the medical opinions of record, including the claimant's, and determined that she could return to her previous work as a sewing machine operator, a job which usually does not require more strength than what was in the residual functional capacities. Therefore, when considering the medical evidence as a whole, the ALJ properly concluded that Vega was not disabilitated under the Act.

**CIVIL NO. 04-1741 (DRD)**               6

## V. CONCLUSION

After reviewing the appellant's administrative record, the ALJ's findings, the parties memorandum of law (Docket Nos. 3, 5 and 7), and the applicable law, the Court finds that she was disabled within the meaning of the Social Security Act.

WHEREFORE, this Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

**SO RECOMMENDED.**

In San Juan, Puerto Rico this 9th day of June, 2005.

*S/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States Magistrate Judge